53 CCPA

**Application of Ole P. ERICKSON, James R. Wasson, Donald C. Faber, Walter L. Treadwell and James A. W. Brown.**

**Patent Appeal No. 7458.**

United States Court of Customs and Patent Appeals.

Nov. 4, 1965.

———◆———

Charles O. Bruce, Edward Brosler, Berkeley, Cal., for appellants.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 7 and 12 [1] of application serial No. 14,951, filed March 14, 1960, entitled "Wedge-Type Flexible Coupling."

The coupling of the application is designed for use in pipe lines such as are used in dredging operations and is a ball joint for connecting sections of rigid pipe so that the pipe sections, which are supported on pontoons, can move relative to one another. It is said that pipe so used is often of very large diameter, as much as 36″ or even larger, and joint parts may be very heavy and hard to handle. The invention facilitates handling.

The coupling consists of three principal parts, a bell or socket connected to the end of a pipe section, a ball having a cylindrical surface to be seated therein connected to an adjacent pipe section, and a ring so mounted on the ball as to encircle sections on either side of a plane passing through the center of the ball, known as "over-the-crown" ring structure. The ring, which is installed in two mating sections welded together after mounting on the ball, is movable thereon due to clearance but not removable therefrom. Such ring structure is old, as is the general type of joint.

The invention relates primarily to the means for connecting the ring to the bell. Wedge hooks are provided on the bell at spaced intervals around its periphery, six being shown. Similarly spaced wedges are provided on the ring. When the parts are brought into mating position, relative rotation of the bell and the ring will cause the wedges to move into the hooks which draws the parts together. To make it possible for one man to connect quite heavy parts, sections of rack are provided about the bell, studs are provided on the ring adjacent the wedges, and a lever-like tool, consisting of a pinion to engage the rack when mounted on the studs and having a long handle, is provided for causing the relative rotation and engagement of the wedges under the hooks.

This locking combination of wedge hooks, wedges, racks, pinion, pinion support, and means for rotating the pinion

---

[1]. Several other claims were appealed to the board and to this court but were withdrawn just before argument. About 40% of the briefs thus becomes irrelevant. There are no allowed claims.

is defined in claim 7 as follows (emphasis ours):

7. Means for clamping and locking abuttable sections of a pipe coupling comprising a plurality of *wedge hooks* spaced about the periphery of one of said sections in over-hanging relationship to the other section, a corresponding number of *wedges* similarly distributed about the periphery of said other section with each of said wedges *including a non-wedge portion* and adapted, upon relative rotational movement between said sections, to wedge into said wedge hooks, a plurality of *racks* located along the abuttable end of one of said sections and each having radially extending teeth, *means for rotatably supporting a pinion* on the other of said sections in meshing engagement with any one of said racks, said pinion being capable upon rotation thereof in one direction to produce relative rotational movement between said two sections to bring said wedges into wedging relationship with said wedge hooks and clamp said sections together, and adapted upon reversal of said rotation, to disengage said wedges from wedging relationship with said wedge hooks, *and means for rotating said pinion.*

Claim 12, instead of being directed to the sub-combination which constitutes the clamping and locking means, is directed to the complete coupling as a combination and includes some additional features, namely, sealing means between the bell and the ball consisting of a groove in the bell and a resilient sealing ring of particular construction therein as well as a "locking" means for locking the opposing sections together. Just what this latter element is supposed to be is not too clear. It could be the "non-wedge portion" of each of the wedges or it could be a pin which is inserted after final lock-up to prevent relative rotation of the parts. Claim 12 does not contain the "non-wedge portion" limitation per se which appears in claim 7.

Supporting the rejection of these two claims, the following references are relied on:

| | | |
|---|---|---|
| Sjoberg | 2,456,744 | Dec. 21, 1948 |
| McElroy | 392,355 | Nov. 6, 1888 |
| Wingerath (German) | 1,036,191 | Aug. 14, 1958 |
| Hamacher (German) | 949,314 | Sept. 20, 1956 |
| Stanton (German) | 541,739 | Dec. 24, 1931 |

#### Claim 7

Rejection of claim 7 is predicated on Hamacher, Stanton, and McElroy. The board succinctly summarized the examiner's position thus:

\* \* \* that providing the wedges of Hamacher with a flat non-wedging part as taught by McElroy would be obvious to one skilled in the art, and that radially extending racks and similarly oriented pinions would be an obvious modification of Hamacher in view of Stanton et al.

It is evident that Hamacher is the principal reference on this rejection. It shows a ball-and-socket pipe joint wherein the socket is provided with "a plurality of wedge hooks" and the part corresponding to appellants' ring has "a corresponding number of wedges." Two of each are shown. They cooperate to draw the coupling parts together as do appellants'. Hamacher's wedges have a continuous taper. To meet the claim limitation that the wedges have "non-wedge" portions, McElroy was cited. This reference is a pipe coupler for railroad steam, water, or other fluid lines coupled between cars. Wedges and lugs are employed and the wedges terminate in "non-wedge" portions as do appellants'.

Hamacher relatively rotates his parts by a lever or handle connected to the ring portion by a forked end attached to opposite sides of the ring by pivot pins. To provide turning leverage, it is swung out at a right angle to the pipe axis. After the joint is made up, it is laid alongside the pipe. The examiner said:

> The provision of radially extending racks and a similarly oriented pinion on Hamacher would be an obvious modification to one having ordinary skill in the art. Even if it were not obvious, Stanton et al. teaches the structure recited and the combination of the teaching of Stanton et al. with the structure of Hamacher would be obvious.

It would seem reasonable to interpret this as saying that at least with the teaching of Stanton before him, as we must assume it would be, one of ordinary skill in the pipe coupling art would find it obvious to modify the Hamacher structure by using the claimed rack and pinion rotating mechanism in place of Hamacher's forked handle. Stanton shows mechanism for making up a pipe coupling of the type wherein a pipe section with a bell-mouth has the plain end of another pipe inserted therein and a gasket is forced into a space between the thus joined ends. The mechanism, which is for forcing the gasket axially into the space, includes a horseshoe-shaped ring carrying a rack which partially surrounds the bell end of one pipe, a matching circular ring carrying wedges which cooperate with wedge segments on the bell mouth, bearing lugs at opposite sides of the latter ring, and pinions mounted therein to co-act with the rack to produce rotation. The resulting relative rotation and consequent wedging coupling action are produced in the same manner as defined in claim 7.

Appellants seek to dispose of this rejection on various grounds. It is said the examiner "badly misconstrued" Hamacher. While it is true he did misconstrue one figure of that reference relating to an alternative construction, that is not the pertinent part of the reference and the misconstruction is immaterial. Hamacher is relied on for the showing of wedge structure, not rack and pinion, the latter being shown by Stanton. As to McElroy it is alleged that the non-wedge portions relied on either do not exist or, if they do, they serve no functional purpose. We think both of these contentions are transparently erroneous. As to Stanton, it is said, inter alia, that it does not relate to a ball joint. While true, we think that is not significant. The mechanical problem of producing relative rotation between adjacent joint-forming parts is the same whether or not the joint is a ball joint. We see no merit and some inaccuracy in the remaining arguments.

Finding no error in the examiner's reasoning as to claim 7, fully endorsed by the board, we affirm as to that claim.

### Claim 12

This claim was rejected as unpatentable over Sjoberg in view of Wingerath, Hamacher, and Stanton. We have already discussed the last two references. Instead of wedge and hook connection, which could also be described as a type of bayonet joint, Sjoberg employs a plurality of threaded pivotally-mounted hooks and tightening nuts, the hooks engaging a continuous flange on the ring. Sjoberg is a patent issued to the assignee of the present application and like the joint of the latter shows a coupling of the bell, ball, and "over-the-crown" ring section type. It has a gasket or seal but it is differently placed than the seal of claim 12. The examiner cited Wingerath to show a seal and placement similar to appellants', as indeed he does though in a ball-and-socket joint for compressed air lines for mine face conveyors. Appellants admit the similarity in the seals but argue that Wingerath is not a coupling having an over-the-crown ring section. Considering that Sjoberg is relied on to show that the latter feature lacks novelty, and that there appears to be no cooperative relationship between the type of ring and the type of seal in

the structure of the application, we think this argument is beside the point. The use of Wingerath's seal in Sjoberg's coupling would be obvious in our opinion.

Claim 12 contains all of the coupling means recited in claim 7 except for the non-wedge portions of the wedges and what we have said about the patentability of claim 7 applies to these limitations of claim 12. Additionally claim 12 differs from the Sjoberg structure only in reciting at the end "means for locking said opposing [bell and ring] sections together." We are not quite sure what this "means" is supposed to be in appellants' structure but whatever it is, Hamacher shows two such means, a pin functioning in a manner similar to the pin used by appellants as well as a set of teeth on the bell member to be engaged by prongs on the ends of the forked rotating handle when it is folded, from which it certainly would be obvious to any mechanic to include such a means in the joint.

The decision of the board is affirmed.

Affirmed.

MARTIN, J., took no part in the consideration or decision of this case.